937 F.2d 609
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Q-DOT CORPORATION, A SUBSIDIARY OF COMBUSTION ENGINEERING,
INC., Plaintiff-Appellant,
v.
A.J. METLER HAULING & RIGGING, INC., Defendant-Appellee.
 No. 90-6012.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges and JOINER, Senior District Judge*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Q-Dot Corporation ("Q-Dot") appeals the district court's grant of summary judgment in this breach of contract action in favor of defendant-appellee A.J. Metler Hauling and Rigging, Inc. ("Metler"). Having carefully considered de novo the record on appeal and the briefs of the parties, we are unable to say that the district court erred in granting summary judgment in favor of Metler.
 
 
 2
 Because the reasons articulated by the district court in its June 18, 1990 opinion and order adequately resolve the issues raised in this appeal, the issuance of a written opinion by this court would be duplicative and serve no useful purpose. Accordingly, the judgment of the district court is affirmed for those reasons set forth in the district court's June 18, 1990 opinion and order.
 
 
 3
 To the extent that the dissent concludes that section 6 (the "Insurance Clause") and section 8 (the "Indemnity Clause") of the Contract Carrier Agreement give rise to potentially distinct liability, we agree. However, the dissent has ignored the plain language of section 8, which provides that Q-Dot would be insured for liability arising out of "(1) operations performed for such insured [Q-Dot] by the named insured [Metler]...." Q-Dot's liability arose out of its own employee's negligence towards himself in undertaking an unsupervised act. Thus, the injury did not arise out of "operations performed" for Q-Dot by Metler. Further, the cases relied on by the dissent to support its conclusion that section 8 covered liability due to the negligence of "all the parties" are distinguishable in that none contained the limiting language of "operations performed" found here. See Adams v. Fred Weber, Inc., 849 F.2d 1018 (7th Cir.1988); Hooks v. Southeast Constr. Corp., 538 F.2d 431 (D.C.Cir.1976); Roblee v. Corning Community College, 134 A.D.2d 803, 521 N.Y.S.2d 861 (1987), appeal denied, 72 N.Y.2d 803 (1988).
 
 
 4
 AFFIRMED.
 
 
 5
 NATHANIEL R. JONES, dissenting.
 
 
 6
 I agree with the majority that the district court correctly determined that section 6 of the Contract Carrier Agreement ("CCA") does not require Metler to indemnify Q-Dot for injuries to Myers. However, as it is my view that the district court did err in finding that Metler's failure to add Q-Dot to Metler's general liability insurance policy pursuant to Section 8 of the CCA did not give rise to a compensable injury to Q-Dot, I respectfully dissent.
 
 
 7
 Section 8 of the CCA provides, in relevant part:
 
 
 8
 8. INSURANCE. Carrier will procure and maintain in force continuously with insurers acceptable to Shipper, throughout the term of this Agreement, the following types of insurance:
 
 
 9
 A. Comprehensive General Liability coverage in an amount of not less than $2.5 million, written with a comprehensive form and including, but not limited to (i) Premises--Operations, (ii) Broad Form Contractual, (iii) Broad Form Property, (iv) Independent Contractors, and (v) to the extent available from Carrier's insurer, Sudden Accidental Pollution Liability, coverages.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 Shipper shall be named as an additional insured under Carrier's policies referred to in subparagraph A, B and D, above, and Carrier agrees that with respect to Coverages A and B, Shipper (the certificate holder) is an insured with respect to liability arising out of (1) operations performed for such insured [Q-Dot] by the named insured [Metler], or (2) the ownership and/or operation of motor vehicles by the named insured or others under the supervision and control of the named insured but only to the extent, and in such amounts, necessary to satisfy Carrier's obligations under the indemnity provisions of this Agreement.
 
 
 13
 J.App. at 40-41. Q-Dot argues that Metler had a duty to provide general liability insurance under section 8 which was separate and distinct from Metler's duties under the indemnity clause. Further, Q-Dot argues that had Metler put Q-Dot on its policy, Q-Dot would have been covered for Myers' injuries under the provision covering "operations performed for [Q-Dot]" of section 8. Metler thus contends that its duty to insure for "operations performed for such insured" is modified by the condition "... but only to the extent, and in such amounts, necessary to satisfy Carrier's obligations under the indemnity provisions of this Agreement." See Section 8, CCA (quoted above). In essence, Metler position is that the qualification language limits Metler's liability under section 8 to the extent of the indemnity provisions in section 6 of the CCA. Therefore, Metler asserts, section 8 adds nothing to the contract except the duty to put Q-Dot on its policy.
 
 
 14
 Q-Dot cites several cases which have considered this situation which seem directly on point. For example, in Adams v. Fred Webber, Inc., 849 F.2d 1018 (7th Cir.1988), an injured plaintiff sued a general contractor and a subcontractor for injuries. The subcontract required the sub to obtain liability insurance for the general by adding the general to its liability policy as a named insured. At trial, the sub argued that it could not be held liable for its failure to name the general as a named insured because the contract did not specify that the insurance had to cover the general's acts of negligence as well as those of the sub. This is exactly the argument Metler makes in the instant case. The court in Adams disagreed, holding that under Missouri law an agreement to insure was separate and distinct from an agreement to indemnify, and, that the obligation to insure "necessarily" covers the negligent acts attributable to the named insured. Id. at 1026; see, also, Hooks v. Southeast Construction Corp., 538 F.2d 431, 433-34 (D.C.Cir.1976) (obligation to name a party as additional insured on liability policy is separate from obligation to indemnify).
 
 
 15
 Roblee v. Corning Community College, 134 A.D.2d 803, 521 N.Y.S.2d 861 (1987), app. denied, 72 N.Y.2d 803, 528 N.E.2d 521, 532 N.Y.S.2d 309 (1988), also considered the situation presented in this appeal. In Roblee, a tort plaintiff was injured at a college reunion dinner. The contract between the college and the catering firm had required the caterer to add the college to its liability policy as an additional insured. The caterer failed to add the college and was required to pay all the damages which the college was obligated to pay to the injured plaintiffs. The court found that "[a] contract to procure or provide insurance coverage is clearly distinct from and treated differently than an agreement to indemnify." Id. at 804, 5231 N.Y.S.2d at 862. Further, the court observed that had the caterer added the college to its liability policy, the comprehensive liability policy would have extended to the negligence of all the parties to the policy, not just the original insured.
 
 
 16
 I think the logic of these cases is compelling. If an obligation to insure does not add anything more to the contract than an indemnity clause, why would such a clause be added? In this case, if Q-Dot gets precisely the same coverage under section 6 and section 8 of the CCA, why have both clauses? Section 6 covers Q-Dot for the negligent acts of Metler. It only makes sense that the "Comprehensive General Liability coverage" described in section 8(A) extends the liability coverage under the policy to the same extent, to the original insured [Metler] and any additional insureds [i.e. Q-Dot]. Logic permits no other conclusion. Thus, interpreting section 6 and 8 together, according to their common sense meaning, Melter would be personally liable to indemnify Q-Dot for its own negligence under section 6, and, it would be required to insure Q-Dot, under its general liability policy, for any additional liability due to the negligence of all the parties. This reading of the contract seems to me to be most consistent with the plain meaning of the contract taking account of all its terms.[1]
 
 
 17
 I also disagree with Metler's interpretation of the "but only to the extent ..." language of section 8. Metler insists that this language was meant to apply to both clause (1), covering all "operations" performed by Metler, and clause (2) which deals with motor vehicles. See CCA, Section 8, supra. However, it seems to me that the language was only meant to cover clause (2) relating to motor vehicle liability. The use of the conjunction "or" between clause (1) and (2), and the lack of any punctuation at the end of clause (2), which would indicate that the clause had ended and the limitation language began, suggests to me that the limitation language was meant to apply only to Metler's motor vehicle liability under clause (2). This bit of interpretation is strengthened by the discussion above about the logical distinctions between indemnity obligations and obligations to insure.
 
 
 18
 For the aforementioned reasons, I conclude that the district court erred in granting summary judgment for Metler and I would reverse based upon Metler's breach of its duty to insure under section 8 of the CCA.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The majority suggests that this interpretation of the contract ignores the "plain language" of section 8(a) regarding "operations performed for such insured by the named insured." I disagree. The accident giving rise to this action occurred when a Metler driver was hit by some falling coil steel which was being unloaded from his truck by a Q-Dot employee. Since the "operations performed" by Metler were the delivery of such coil steel to Q-Dot's Garland, Texas facility, it does not require a stretch to suggest that the unloading of such steel would be included in the notion of "operations performed" by Metler. Surely, driving the steel on the Q-Dot property would fall within the "operations performed" provision. It seems odd to suggest that an accident which occurred while the Metler driver was walking away from his delivery truck would not be considered within the scope of the "operations performed" provision. For example, had someone been injured because the coil steel fell from the truck after it was parked, would the majority could not seriously suggest that Metler's job was complete at the moment the truck entered the Q-Dot lot. Further, were section 8(a) to be read as the majority suggests, it would add nothing to the contract that was not already covered in section 6 regarding indemnity. Since, section 6 provides coverage for negligence of Metler employees, unless section 8's general liability provision is read to expand coverage, section 8 would have no meaning. Therefore, I believe that employing the common blackletter practice of reading contracts to give meaning to all the clauses of the contract, section 8 must read to require general liability coverage for the negligence of all parties related to the "operations performed for such insured by the named insured."